| | |
|---|---|
| OCTAPHARMA PLASMA, INC.,<br><br>           Plaintiff,<br><br>v.<br><br>SEEPOINT, LLC f/k/a SEEPOINT TECHNOLOGY, LLC, JONATHAN ARFIN, and SYDNEY ARFIN<br><br>           Defendants. | COMPLAINT<br>(Jury Trial Demanded) |

**NOW COMES** Octapharma Plasma, Inc., ("Octapharma" or "Plaintiff"), by and through counsel, and files this Complaint against SeePoint, LLC ("SeePoint"), Jonathan Arfin, and Sydney Arfin, ("the Arfins" or collectively "Defendants") and alleges as follows:

## INTRODUCTION

This cause arises out of the Arfins' unlawful business activities as the putative President, Owner, and sole Operating Members of SeePoint, their family business and alter ego, whereby they contracted with Octapharma to sell kiosks with accompanying hardware and software for use at Octapharma's plasma donation centers.  As part of the contract, Octapharma was induced to pre-pay for extended warranties for certain Service Products and Services based on the representations of SeePoint and the Arfins as outlined in the Warranty and Service Policy. SeePoint and the Arfins did not fulfill the order for the full number of kiosks contracted for by Octapharma and ceased performing services shortly after contracting.  SeePoint then sold its equipment, including parts and hardware and software, to a third party unbeknownst to Octapharma.  It did not sell the contracts for services of the kiosks, hardware, or software, although

1

Arfin falsely told Octapharma that it did. Despite representations by the Arfins to Octapharma that they would reinstate the warranties for services and fulfill SeePoint's legal obligations, they have failed to do so.

## PARTIES

1.      Plaintiff Octapharma Plasma, Inc. is a Delaware corporation with a registered office in Raleigh, North Carolina and a principal place of business in Charlotte, North Carolina.

2.      Defendant SeePoint, LLC is a Delaware corporation with a registered office and principal place of business in Redondo Beach, California.

3.      Defendant Jonathan Arfin resides at 2723 Alvord Lane, Redondo Beach, California, and is a citizen of Los Angeles County, California.

4.      Defendant Sydney Arfin resides at 2723 Alvord Lane, Redondo Beach, California, and is a citizen of Los Angeles County, California.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1132 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over SeePoint because it conducts business in the State of North Carolina, and has conducted business with Plaintiff within the State of North Carolina and within this district, including negotiating and entering into the contract at issue in this litigation with Plaintiff in the State of North Carolina and in this judicial district.

7.      This Court has personal jurisdiction over Jonathan Arfin, the "President" and Owner of SeePoint, his alter ego, because he conducts business in the State of North Carolina, and has conducted business on behalf of SeePoint within the State of North Carolina and within this

district, and negotiated and entered into a contract with Plaintiff on behalf of SeePoint in the State of North Carolina and in this judicial district.

8.      This Court has personal jurisdiction over Sydney Arfin, Vice President and Registered Agent of SeePoint, her alter ego, because she conducts business in the State of North Carolina, and has conducted business on behalf of SeePoint within the State of North Carolina and within this district, and negotiated and entered into a contract with Plaintiff on behalf of SeePoint in the State of North Carolina and in this judicial district.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district.

## FACTS

### The Business of Octapharma Plasma, Inc.

10.      Octapharma is engaged in the highly specialized and essential industry of collecting lifesaving plasma from donors throughout the United States and across the world.

11.      From its headquarters in Charlotte, North Carolina, Octapharma manages over 160 plasma donation centers across the United States.

12.      Plasma is the liquid part of human blood that carries blood cells, antibodies, and platelets, and is made mostly of water and proteins.  It is used to treat medical emergencies such as trauma, shock and burns, and also to create medications for rare chronic conditions such as autoimmune disorders and hemophilia. In most cases, plasma proteins cannot be manufactured synthetically.

13.      Octapharma collects, tests, purifies, and processes plasma for efficacy, subject to the standards and requirements set forth by the Food and Drug Administration.

14.     During a donor's first visit, the prospective donor must provide proof of identity via a valid photo ID, postal address, and Social Security number. Octapharma inputs each donor's information into a Positive Donor Identification system that identifies each donor and verifies prior donations.

15.     The Positive Donor Identification system requests that each donor scan his or her finger at a kiosk that operates FDA-regulated donor management software. The donor then enters his or her date of birth and answers medical screening questions to confirm his or her identity and log into the kiosk. The system validates each donor and cross-references the donor with previous visits to Octapharma to ensure they have not exceeded the donation limit. The kiosks are essential to the operation of Octapharma's business.

**Jonathan Arfin, Sydney Arfin, and the Business of SeePoint**

16.     Jonathan Arfin is the named President and Chief Executive Officer of SeePoint, LLC f/k/a SeePoint Technology, LLC.

17.     Public records reflect that Arfin started SeePoint Technology, LLC in 1999 and changed the name to SeePoint, LLC in 2016.

18.     Jonathan Arfin's wife, Sydney Arfin is the Vice President and registered agent for services of process of SeePoint.

19.     Jonathan Arfin and Sydney Arfin are the only organizers, owners, members, and managers of SeePoint.

20.     Jonathan Arfin and Sydney Arfin have complete control of SeePoint's finances, policies, and business practices.

21.     SeePoint is in the computer equipment, peripherals, and manufacturing industry and provides interactive kiosk systems.  It provides the hardware, software, and services necessary for successful kiosk implementation.

**Octapharma and SeePoint's Business Relationship**

22.     Octapharma had done business with Defendants in 2019, and based on representations Jonathan Arfin made on behalf of SeePoint, entered into the contract at issue in the instant matter.

23.     By April 7, 2021, Octapharma and SeePoint through the actions of the Arfins entered into a contract for the purchase of 266 kiosks, accompanied with custom hardware and software, manufactured by SeePoint, for use at Octapharma's plasma donation centers.  *See* Master Services Agreement, attached hereto as **Exhibit 1**.

24.     The Master Services Agreement (hereinafter "MSA" or "Contract") included a Manufacturer's Services & Statement of Limited Warranty and Liability, under which SeePoint and the Arfins agreed to provide Support Procedures.  *See* **Ex. 1**, Exhibit B, p. 7.

25.     The Support Procedures presented to Octapharma included a 24/7 Comprehensive Online Support system that could be accessed for assistance with troubleshooting, problem diagnosis, and downloads.  If an issue could not be resolved using the online system, SeePoint provided a Telephone Hardware Warranty Support system to assist with resolving the issue via telephone.  *Id.*

26.     The SeePoint Warranty and Service Policy Service Dispatch policy further provides that in most cases, SeePoint would dispatch a service technician to repair the issue.  *Id.*

27.     In reliance upon these and other false representations of SeePoint and Jonathan Arfin (hereafter referred to as "the false representations"), Octapharma pre-paid for extended

warranties for these Support Procedures in the amount of $117,110.50 when it entered into the agreement.

28.     On or about May 3, 2021, Octapharma was shocked to learn from another vendor that SeePoint supposedly had ceased operations and that a third party purchased SeePoint's hardware inventory, but did not purchase other company assets or liabilities.

29.     At that time, a total of six kiosks had been shipped to two of Octapharma's locations: Louisville and Lexington, Kentucky.  Those kiosks were not delivered at the time SeePoint ceased operations but were ultimately delivered with the help of a former SeePoint employee who moved to the new third party vendor.

30.     Although Purchase Orders had not been sent to SeePoint for locations beyond Louisville and Lexington, requests were underway and SeePoint knew of Octapharma's intent to purchase additional kiosks in reliance on Defendants representations to it.

31.     Octapharma received no formal notification from SeePoint or the Arfins that SeePoint was out of business, would not be fulfilling orders, or would not be providing support.

32.     Octapharma immediately attempted to contact SeePoint and Jonathan Arfin, but all emails were returned undeliverable and phone calls were directed to either voicemail or an out of service message.

33.     Receiving no response, on June 10, 2021, Octapharma sent written correspondence to SeePoint and Jonathan Arfin to notify them of the issues and demand that SeePoint fulfill its obligations to Octapharma.

34.     On June 28, 2021, Jonathan Arfin left a voicemail message (which has been preserved) for Barry Pomeroy, Vice President of Octapharma notifying him that:

- SeePoint had been forced to cease operations due to an alleged medical issue experienced by Arfin;

- Arfin sold SeePoint to another company which he referred as DCS;

- Emails were sent to Octapharma with links on how to handle future service issues though DCS;

- All parts for Octapharma kiosks were sold to DCS so they could service Octapharma systems; and

- SeePoint was certain its customers were taken care of.

35.     Octapharma contacted DCS Global Systems, Inc. (hereinafter "DCS"), which advised that Jonathan Arfin's statements were false, and it did not purchase SeePoint, it did not and would not send an email with a link for future support instructions, and it did not assume responsibility for SeePoint's service contracts.

36.     DCS confirmed that it only purchased equipment and parts inventory from SeePoint and the Arfins.

37.     DCS further advised that SeePoint and the Arfins retained the proceeds paid by Octapharma for equipment and extended service warranties.

38.     On November 15, 2021, Octapharma sent correspondence to Jonathan Arfin, notifying him of the information it discovered after speaking with DCS and demanding repayment of the $117,110.50 Octapharma paid for extended warranty services under the MSA that were never received.

39.     On December 21, 2021, Jonathan Arfin's counsel notified Octapharma's counsel that Jonathan Arfin had agreed to support Octapharma's units through a third party vendor.

40.     Counsel further stated that SeePoint would work to reinstate the attached warranty for services though third party vendor, Tech Link, and reactivate Octapharma's email address for product support. *See* SeePoint Technology Hardware Products Worldwide Limited Warranty Statement, attached hereto as **Exhibit 2**.

41.     Octapharma sought to obtain the services promised by Jonathan Arfin on several occasions, but no third party service provider had been secured to provide the necessary support for the operation of the kiosks or take any other actions to comply with SeePoint and the Arfins' legal obligations.

42.     To date, SeePoint and the Arfins have failed to provide the Support Procedures contracted for under the MSA, or any services outlined under the SeePoint Technology Hardware Products Worldwide Limited Warranty Statement.

43.     SeePoint and the Arfins have retained all payments made by Octapharma despite not providing services and equipment.

44.     SeePoint and the Arfins accepted the $117,110.50 payment from Octapharma before going out of business just three weeks later because it was undercapitalized.

45.      The Arfins had complete domination over SeePoint.

46.     SeePoint functioned as a mere instrumentality of the Arfins.

## CLAIMS FOR RELIEF
### COUNT I
### (Breach of Contract)

47.     Plaintiff incorporates by reference in this Claim for Relief Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48.     There was in effect a valid contract between Octapharma and SeePoint, which incorporated a Warranty and Service Policy, attached thereto as Exhibit B.  *See* **Ex. 1.**

49.     SeePoint breached its duties under the contract, specifically, when it failed to build and supply 260 of the 266 kiosks for which Octapharma contracted under the MSA.

50.     SeePoint further breached its duties under the contract when it failed to provide Support Procedures including 24/7 Comprehensive Online Support, Telephone Hardware

Warranty Support, and Service Dispatch support, as provided by the SeePoint Warranty and Service Policy attached to the MSA, for which Octapharma pre-paid.

51.     These actions constituted a breach of the MSA and breach of the Warranty incorporated therein as Exhibit B.

52.     As a result of SeePoint's failure to deliver the contracted-for kiosks, Octapharma suffered actual and consequential damages and will continue to suffer damages in an amount to be proven at trial.

53.     Further, as a result of SeePoint's breach, Octapharma suffered damages in the amount of $117,110.50 that it specifically paid for extended warranties of the services, which were never provided, consequential damages equal to the difference in the amount of the contracted for parts and the amount Octapharma had to pay for higher priced replacement parts, and special damages equal to lost profits as a result of Octapharma's time spent responding to SeePoint's breach of contract, and lost revenue from missed business opportunities as a result of SeePoint's failure to supply the outstanding kiosks.

## COUNT II
### (Breach of Warranty)

54.     Plaintiff incorporates by reference in this Claim for Relief Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

55.     There was in effect a valid contract between Octapharma and SeePoint, which incorporated a Warranty and Service Policy, attached thereto as Exhibit B.  *See* **Ex. 1.**

56.     The Warranty and Service Policy was a promise made by SeePoint to Octapharma to provide the necessary services to operate the kiosks that were sold to Octapharma under the MSA.

57.     Octapharma pre-paid $117,110.50 to extend the Warranty and Service Policy, the performance of which was the basis of bargain upon which Octapharma relied in making its decision to purchase the kiosks.

58.     SeePoint breached its duties under the contract, specifically, when it failed to provide Support Procedures including 24/7 Comprehensive Online Support, Telephone Hardware Warranty Support, and Service Dispatch support, as provided by the SeePoint Warranty and Service Policy attached to the MSA, for which Octapharma pre-paid.

59.     These actions constituted a breach of the express warranty incorporated under the MSA.

60.     Following the breach of the express warranty, Jonathan Arfin notified Octapharma that he would work to reinstate SeePoint's Limited Liability Warranty.  *See* **Ex. 2.**

61.     SeePoint failed to reinstate the original warranty or the subsequent Limited Liability Warranty for services.

62.     These actions constituted a subsequent breach of the Limited Liability Warranty for services.

63.     As a result of SeePoint's breach, Octapharma suffered damages in the amount of $117,110.50 that it specifically paid for extended warranties of the services, which were never provided, consequential damages equal to the difference in the amount of the contracted for parts and the amount Octapharma had to pay for higher priced replacement parts, and special damages equal to lost profits as a result of Octapharma's time spent responding to SeePoint's breach of contract, and lost revenue from missed business opportunities as a result of SeePoint's failure to supply the outstanding kiosks, and damages it continues to suffer as a result of not receiving the kiosks for which it contracted, in an amount to be proven at trial.

## COUNT III
### (Breach of Duty of Good Faith and Fair Dealing)

64.     Plaintiff incorporates by reference in this Claim for Relief Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

65.     There was in effect a valid contract between Octapharma and SeePoint, which incorporated a Warranty and Service Policy, attached thereto as Exhibit B.  *See* **Ex. 1.**

66.     SeePoint through the Arfins intentionally deprived Octapharma of its contractual rights for goods when it shut down and sold its equipment to DCS a mere three weeks after contracting with Octapharma and shuttered its company without notifying Octapharma.

67.     SeePoint intentionally deprived Octapharma of its contractual rights for services when it sold its equipment to DCS without selling the pre-paid extended warranties for service on the kiosks, or contracting the service agreement to a third party.

68.     These actions constituted a breach of duty of good faith and fair dealing.

69.     As a result of SeePoint's breach, Octapharma suffered damages in the amount of $117,110.50 that it specifically paid for extended warranties of the services, which were never provided, and will continue to suffer damages as a result of not receiving the kiosks for which it contracted, in an amount to be proven at trial.

## COUNT IV
### (Unjust Enrichment)

70.     Plaintiff incorporates by reference in this Claim for Relief Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

71.     There was in effect a valid contract between Octapharma and SeePoint, which incorporated a Warranty and Service Policy, attached thereto as Exhibit B.  *See* **Ex. 1.**

72.     At the time it entered into the agreement, Octapharma pre-paid $117,110.50 in exchange for extended warranties for services under the Warranty and Service Policy of the MSA.

73.     SeePoint accepted the $117,110.50 in exchange for pre-payment of the extended warranties for services.

74.     SeePoint and the Arfins failed to provide the services for which Octapharma pre-paid.

75.     SeePoint and the Arfins retained the funds paid by Octapharma for those service warranties.

76.     SeePoint and the Arfins have been unjustly enriched by its retention of the $117,110.50 and Octapharma is entitled to recovery for the same.

## COUNT V
### (Fraud)

77.     Plaintiff incorporates by reference in this Claim for Relief Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

78.     On or about April 7, 2021, based on the false representations of SeePoint and the Arfins (*inter alia*, that they intended to deliver 266 kiosks to Octapharma which was accompanied with custom hardware and software, and that this software would be warrantied, supported and serviced by SeePoint), Octapharma entered into a valid contract with SeePoint for goods and services, which incorporated a Warranty and Service Policy, attached thereto as Exhibit B. *See* **Ex. 1.**

79.     At the time it entered into the agreement, and in reliance on the false representations, Octapharma pre-paid $117,110.50 in exchange for extended warranties for services under the Warranty and Service Policy of the MSA.

80.    At the time SeePoint and Octapharma entered this contract, SeePoint knew all of the false representations were untrue and it had no intentions of keeping its promises because it was fully engaged in selling equipment and parts to DCS while planning to provide none of the services it promised to Octapharma.  On May 3, 2021, less than a month later, Octapharma informally learned that SeePoint sold its equipment to another vendor and immediately attempted to contact SeePoint for confirmation. By that time, SeePoint's equipment, including products, hardware and software, had been sold to DCS.

81.    At the time Octapharma entered into the MSA, SeePoint and the Arfins knew or should have known that SeePoint would not fulfill the contract and/or of the upcoming sale to DCS, which occurred at some point in the next three weeks.

82.    Nevertheless, SeePoint and the Arfins knowingly and falsely misrepresented to Octapharma that it had the inventory to manufacture and the capability of providing service for those 266 kiosks.  Specifically, at the time they made these false misrepresentations SeePoint and the Arfin's were undertaking to sell the kiosks and other equipment including software and hardware to a buyer with no intention or capability to service or provide support.

83.    The false misrepresentations were made with the intent to deceive Octapharma so that in reliance upon them, Octapharma would pre-pay $117,110.50 for extended services warranties that SeePoint and the Arfins never intended to provide.

84.    Octapharma was in fact deceived and consequently, in reliance on the false representations, paid and suffered damage in the amount of $117,110.50 as a result.  Furthermore, at the time it entered the MSA with SeePoint, it had no reason to believe SeePoint would be incapable of fulfilling its obligations.   Consequently, its reliance on SeePoint's false representations was reasonable.

85.     On June 28, 2021, Jonathan Arfin left a voicemail for Octapharma which was wholly untrue.

86.     Arfin's message contained false representations and/or concealments of material facts, including:

- Arfin sold SeePoint to DCS;

- DCS assumed responsibility for Octapharma's service contracts; and

- Octapharma should have received an email with links on how to handle service issues moving forward;

- SeePoint's obligations would be taken care of.

These voicemail false representations were intended to further deceive Octapharma regarding SeePoint's prior false representations about its obligations to fulfill its contract and warranty.

87.     These statements were reasonably calculated to deceive Octapharma, were made with intent to deceive Octapharma, did in fact deceive Octapharma, and resulted in additional damages to Octapharma in excess of the amount it pre-paid for the extended service warranties, $117,110.50, and other damages in an amount to be proven at trial.

**COUNT VI**
**(Negligent Misrepresentation)**

88.     Plaintiff incorporates by reference in this Claim for Relief Paragraphs 1 through 44 of this Complaint as if fully set forth herein.

89.     There was in effect a valid contract between Octapharma and SeePoint, which incorporated a Warranty and Service Policy, attached thereto as Exhibit B.  *See* **Ex. 1.**

90.     "Manufacturer" SeePoint owed a duty of care to "Customer" Octapharma related to the Equipment and Application Software, (collectively the "Product") sold under the MSA.

91.     At the time it entered into the agreement, Octapharma pre-paid $117,110.50 in exchange for extended warranties for Support Procedures under the Warranty and Service Policy of the MSA.

92.     In issuing the pre-payment, Octapharma justifiably and reasonably relied on information provided by SeePoint and Jonathan Arfin, including that it would service the kiosks that it manufactured and sold to Octapharma.

93.     At the time SeePoint and Jonathan Arfin made representations regarding services that would be provided, they knew or should have known those services would not, in fact, be provided.

94.     In an effort to avoid responsibility for SeePoint's false representations, Jonathan Arfin falsely told Octapharma that he sold the entire company, including the services contracts, to DCS and that DCS would fulfill the services SeePoint had promised to provide.  At the time he did so, he knew or should have known there was no such agreement.

95.     Octapharma later discovered that this information was false.

96.     Jonathan Arfin then represented that he would contract with a third party vendor to reinstate the pre-paid warranty for Support Procedures.

97.     To date, the Arfins and SeePoint have failed to do so.  Neither SeePoint nor any third party vendor has been providing the services outlined in the Warranty and Service Policy of the MSA.

98.     Jonathan Arfin knew or should have known he was supplying false information for the guidance of Octapharma in its business transactions, upon which Octapharma justifiably relied to issue pre-payment for extended warranties of Support Procedures and to await reinstatement of those warranties.

99.     Arfin's misrepresentations resulted in damages to Octapharma equal to the amount it pre-paid for the extended service warranties, $117,110.50, and damages it will continue to suffer, in an amount to be proven at trial.

## COUNT VII
### (Unfair and Deceptive Trade Practices - N.C.G.S. § 75-1-1 *et. seq.*)

100.     Plaintiff incorporates by reference in this Claim for Relief Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

101.     Among other conduct, SeePoint and/or the Arfins engaged in the following conduct which was unfair and deceptive:

- falsely representing to Octapharma that it would sell it 266 kiosks when in fact it had either sold or was planning to sell its equipment and parts inventory to DCS;

- falsely representing to Octapharma that it would provide its custom hardware and software with support services when in fact it never intended to do so;

- falsely representing to Octapharma that it had been forced to cease operations, was sold to DCS, that DCS would service Octapharma's hardware and software when in fact DCS had not purchased SeePoint nor undertaken any of its obligations to Octapharma;

- falsely representing to Octapharma it would warrant and provide support services for its equipment in order to obtain a $117,110.50 payment from Octapharma when in fact it was in the process of either shutting down its business, selling it, or both; and

- retaining the $117,110.50 payment even though it had no intention of fulfilling, and made no provision for anyone else to fulfill, its obligations to Octapharma to warrant and service the equipment.

The above-described conduct, as well as other similar conduct is deceptive, unfair, unethical, immoral and unscrupulous.

102.     The above described unfair and deceptive conduct occurred in the course of a series of business dealings between Octapharma, SeePoint and the Arfins that was commercial and

involved the payment of money for goods and/or services. Therefore, the conduct alleged above was in or affected commerce.

103. Octapharma relied upon and acted to its detriment based upon the unfair and deceptive activity described above. As a proximate cause of the unfair and deceptive conduct of SeePoint and the Arfins, Octapharma has been deprived of money, business opportunities, sales, commercial activity and profits, among other injuries.

104. Consequently, Octapharma has been actually damaged by the unfair and deceptive conduct of SeePoint and/or the Arfins. Accordingly, Octapharma seeks all available legal and equitable remedies afforded by the Unfair and Deceptive Trade Practices Act including trebled damages, attorney's fees, and costs.

## COUNT VIII
### (Punitive Damages)

105. Plaintiff incorporates by reference in this Claim for Relief Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

106. SeePoint and the Arfins failed to act in a reasonable and prudent manner with regard to their obligations as the manufacturer of kiosks sold to their customer, Octapharma, under the MSA, and committed tortious acts in its dealings with Octapharma.

107. In making and/or directing false representations to Octapharma, Jonathan Arfin displayed willful misconduct with an intent to deceive Octapharma.

108. Octapharma is entitled to an award of punitive damages against SeePoint because of Jonathan Arfin's fraudulent conduct pursuant to N.C. Gen. Stat. § 1D-15(1)(a)(1).

## PRAYER FOR RELIEF

WHEREFORE, Octapharma Plasma, Inc. prays that this Court enter an order and judgment as follows:

1.  Order Defendant to pay to Plaintiff all its damages, including actual damages pursuant to N.C. Gen. Stat. § 25-2-713, actual damages pursuant to N.C. Gen. Stat. § 25-2-714, consequential damages pursuant to N.C. Gen. Stat. § 25-2-715, actual damages pursuant to N.C. Gen. Stat. § 25-2-721, actual damages, trebled damages, attorneys fees and costs pursuant to N.C. Gen. Stat. §§ 75-1.1 *et. seq.*, punitive damages pursuant to N.C. Gen. Stat. § 1D-15(1)(a)(1), and special damages for time spent responding to Defendants' breach and lost profits as a result of Defendant's breach;

2.  Award Plaintiff its attorney's fees and costs;

3.  Pierce the corporate veil and hold Jonathan Arfin and Sydney Arfin jointly and severally liable for the judgment in their individual capacities;

4.  And order any other relief this Honorable Court deems just and proper.

Respectfully submitted this the 17th day of August, 2022.

s/ Kevin V. Parsons
Kevin V. Parsons, NC Bar No. 19226
Lewis Brisbois Bisgaard & Smith LLP
521 East Morehead Street, Suite 250
Charlotte, NC 28277
Phone: 704-557-9929
Fax: 704-557-9932
Kevin.Parsons@lewisbrisbois.com

(*Pro Hac Vice Forthcoming*)
Mary A. Smigielski
Mary.Smigielksi@lewisbrisbois.com
Stephen L. Sitley
Stephen.Sitley@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
312.345.1718

**Attorneys for Octapharma Plasma, Inc.**